373 So.2d 1294 (1979)
STATE of Louisiana
v.
Tracy Lee HUDSON.
No. 63450.
Supreme Court of Louisiana.
June 25, 1979.
Rehearing Denied September 4, 1979.[*]
*1295 S. Patrick Phillips, Chief Asst. Indigent Defender, Indigent Defender Bd., 26th Judicial Dist., Bossier City, for defendant-relator.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Henry N. Brown, Jr., Dist. Atty., for plaintiff-respondent.
BLANCHE, Justice.
The issue presented is whether the double jeopardy clause of the Fifth Amendment precludes a second trial after a jury's guilty verdict has been set aside and a new trial ordered pursuant to LSA-C.Cr.P. art. 851 solely for lack of sufficient evidence to sustain the jury's verdict.
Petitioner, Tracy Lee Hudson, was convicted by a jury of first degree murder, LSA-R.S. 14:30, and sentenced to life imprisonment at hard labor without benefit of parole, probation or suspension of sentence. Pursuant to his duty to pass upon the sufficiency of the evidence, State v. Daspit, 167 La. 53, 118 So. 690 (1928); LSA-C.Cr.P. art. 851, Official Revision Comment (d); the trial judge granted petitioner's motion for a new trial upon finding insufficient evidence to support the verdict returned by the jury.[1] The granting or the refusal to grant a new trial is unreviewable by this Court, except for error of law. LSA-C.Cr.P. art. 858. Accordingly, the State's application for review erroneously asserting that the district court may pass only upon whether there is "some evidence" was denied. 344 So.2d 1 (La.1977) Upon retrial the State introduced additional evidence, in particular an eye witness to the murder who had not been produced at the original trial. The petitioner was convicted by a jury of first degree murder for the second time and resentenced to life imprisonment at hard labor without benefit of parole, probation or suspension of sentence. On appeal, the conviction and sentence were affirmed. 361 So.2d 858 (La.1978).
On October 2, 1978, petitioner applied for habeas corpus relief in the district court, alleging for the first time that the second trial in this case placed him in jeopardy a second time for the same offense in violation of the double jeopardy clause of the Fifth Amendment. The trial court denied relief, and petitioner applied to this Court. We granted petitioner's application to consider his plea of double jeopardy.
In Burks v. United States, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978), the United States Supreme Court announced that the *1296 double jeopardy clause of the Fifth Amendment precluded a second trial when a defendant's conviction is reversed by a reviewing court solely for lack of sufficient evidence to sustain the jury's verdict. In Burks, the defendant was convicted of bank robbery in federal district court and the trial judge denied his motion for new trial. On appeal, the defendant claimed that he had successfully established a prima facie defense of insanity through the testimony of three expert witnesses and the Government had failed to meet its burden of coming forward and proving sanity beyond a reasonable doubt. The Supreme Court observed:
"... [T]he reviewing court went on to hold that the United States had not fulfilled its burden since the prosecution's evidence with respect to Burks' mental condition, even when viewed in the light most favorable to the Government, did not `effectively rebut' petitioner's proof with respect to insanity and criminal responsibility. In particular the witnesses presented by the prosecution failed to `express definite opinions on the precise questions which this court [of appeals] has identified as critical in cases involving the issue of [in]sanity.'" (98 S.Ct. at 2143Emphasis added)
The court of appeal remanded the case to the district court, directing that court to enter a verdict of acquittal unless the State was able to present sufficient additional evidence to carry its burden. The defendant sought relief on double jeopardy grounds.
The Supreme Court in Burks held that a second trial would normally be permitted after a conviction had been reversed due to trial error, but that the double jeopardy clause prohibited a second trial after a conviction had been reversed due to failure of proof. The Court explained the rationale for this distinction as follows:
"... In short, reversal for trial error, as distinguished from evidentiary insufficiency, does not constitute a decision to the effect that the government has failed to prove its case. As such, it implies nothing with respect to the guilt or innocence of the defendant. Rather, it is a determination that a defendant has been convicted through a judicial process which is defective in some fundamental respect, e. g., incorrect receipt or rejection of evidence, incorrect instructions, or prosecutorial misconduct. When this occurs, the accused has a strong interest in obtaining a fair readjudication of his guilt free from error, just as society maintains a valid concern for insuring that the guilty are punished. See Note, Double Jeopardy: A New Trial After Appellate Reversal for Insufficient Evidence, 31 U.Chi.L.Rev. 365, 370 (1964).
"The same cannot be said when a defendant's conviction has been overturned due to a failure of proof at trial, in which case the prosecution cannot complain of prejudice, for it has been given one fair opportunity to offer whatever proof it could assemble. . . . Moreover, such an appellate reversal means that the Government's case was so lacking that it should not have even been submitted to the jury. Since we necessarily afford absolute finality to a jury's verdict of acquittalno matter how erroneous its decisionit is difficult to conceive how society has any greater interest in retrying a defendant when, on review, it is decided as a matter of law that the jury could not properly have returned a verdict of guilty." (98 S.Ct. at 2149-2150)
In precluding a second trial when a defendant's conviction has been overturned due to failure of proof at trial, the high court expressly declined to follow prior jurisprudence which found a "waiver" of the double jeopardy guarantee whenever the defendant sought a new trial as one of his remedies in the trial court:
"In our view it makes no difference that a defendant has sought a new trial as one of his remedies, or even as the sole remedy. It cannot be meaningfully said that a person `waives' his right to a judgment of acquittal by moving for a new trial. ... To the extent that our prior decisions suggest that by moving for a new trial, a defendant waives his *1297 right to a judgment of acquittal on the basis of evidentiary insufficiency, those cases are overruled." (98 S.Ct. at 2150)
The double jeopardy protection of the Fifth Amendment is applicable to state criminal proceedings through the Fourteenth Amendment. Benton v. Maryland, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969); State v. Thompson, 366 So.2d 1291 (La.1978).
While the case at bar involves the granting of a motion for new trial by the trial court for insufficient evidence rather than review at the appellate level, we deem the same principles are applicable to both.
LSA-C.Cr.P. art. 851 provides:
"The motion for a new trial is based on the supposition that injustice has been done the defendant, and, unless such is shown to have been the case the motion shall be denied, no matter upon what allegations it is grounded.
"The court, on motion of the defendant, shall grant a new trial whenever:
"(1) The verdict is contrary to the law and the evidence ...."
This provision permits the trial judge to grant a defendant a new trial if, in his opinion, the evidence is insufficient to convict. State v. Rollins, 351 So.2d 470 (La.1977); State v. Jack, 332 So.2d 464 (La. 1976); State v. Jones, 288 So.2d 48 (La. 1974). This Court's appellate jurisdiction in criminal matters extends only to questions of law, LSA-Const. Art. 5, § 5(C), and it is only where a defendant has moved for a judgment of acquittal in a trial before a judge alone (LSA-C.Cr.P. art. 778) or for a new trial based upon the contention that there is no evidence at all of the crime charged or an essential element thereof, is a question of law presented which this Court can review. State v. Cobbs, 350 So.2d 168 (La.1977); State v. Blackstone, 347 So.2d 193 (La.1977); State v. Jamerson, 341 So.2d 1118 (La.1977).
This Court has recognized that when it finds on review that in a prior trial there was no evidence of the crime charged or an essential element thereof, Burks precludes retrial, and a verdict of acquittal must be entered. State v. Thompson, 366 So.2d 1291 (La.1978); State v. Allien, 366 So.2d 1308 (La.1978); State v. Liggett, 363 So.2d 1184 (La.1978). In State v. Thompson, supra, we noted that the Supreme Court indicated that the contention that there was no evidence of the crime charged or an essential element thereof may properly be raised solely by a motion for new trial. State v. Thompson, supra, 366 So.2d at 1293-94. Thus, if a trial judge granted a motion for new trial on the grounds that no evidence of the crime charged or an essential element thereof, Burks, supra, and our holding in Thompson, supra, would require the trial judge to enter a verdict of acquittal.
The question in the instant case is whether Burks compels the same result where the trial judge grants a motion for new trial on the grounds of insufficient evidence as opposed to granting the motion on the grounds of no evidence. We believe it does not.
We believe the holding in Burks was addressed solely to those cases where a reviewing court (whether it be the trial judge or an appellate court) finds that as a matter of law there was a failure of proof at the trial level. The Court, in Burks, explained:
"The same cannot be said when a defendant's conviction has been overturned due to a failure of proof at trial, in which case the prosecution cannot complain of prejudice, for it has been given one fair opportunity to offer whatever proof it could assemble. ... Moreover, such an appellate reversal means that the Government's case was so lacking that it should not have even been submitted to the jury." (98 S.Ct. at 2149-2150Emphasis added)
Interpreting this language in light of this State's rules regarding appellate review of evidence presented in criminal matters, we believe the holding in Burks (precluding a second trial) is limited to those cases where, as a matter of law, a reviewing court has determined that in a prior trial there was no evidence of the crime charged or an essential element thereof.
*1298 We are buttressed in this conclusion by what we feel was an attempt by the Court to narrow its holding in Burks:
"... The prevailing rule has long been that a district judge is to submit a case to the jury if the evidence and inferences therefrom most favorable to the prosecution would warrant the jury finding the defendant guilty beyond a reasonable doubt. [Citations omitted] ... While this is not the appropriate occasion to re-examine in detail the standards for appellate reversal on grounds of insufficient evidence, it is apparent that such a decision will be confined to cases where the prosecution's failure is clear. ..." (98 S.Ct. at 2150)
Because the trial judge herein ordered a new trial pursuant to LSA-C.Cr.P. art. 851(1) solely for lack of sufficient evidence to sustain the jury's verdict (a factual determination entrusted exclusively to the trial judge under our law and jurisprudence), we hold that retrial of the defendant was not precluded by the double jeopardy clause.

DECREE
For the above and foregoing reasons, the judgment of the district court denying relator relief on his habeas corpus application is affirmed.
AFFIRMED.
DENNIS, J., dissents and assigns reasons.
TATE, J., concurs and assigns reasons.
DIXON, J., concurs.
TATE, Justice, concurring.
I fully concur in the holding of the majority.
Although Burks v. United States, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978), has language that without close analysis seems to require upholding the double jeopardy plea, in my opinion the majority has correctly concluded that its rationale and holding are not applicable to the present situation.
Here, the record of the first trial shows that the state produced evidence sufficient to present the jury the question of the defendant's guilt of the crime. We would not have held, on appeal, that the evidence in that record was so insufficient as to constitute no evidence of the crime, so as to justify our setting aside the verdict of guilty.
Nevertheless, the trial judge was not completely satisfied that the accused's guilt was proved beyond a reasonable doubt. He did not grant a new trial for a reason that he did not think the state had produced sufficient evidence to prove guilt, but rather because he himself (to satisfy his doubtsnot the jury's, which had concluded otherwise) had personal doubts that the evidence was sufficient to prove guilt beyond a reasonable doubt. Commendably and conscientiously, he therefore ordered a new trial; otherwise, the sufficiency of the evidence would not have been reviewable by this court, despite his own doubts that the defendant's guilt was sufficiently proved.
The present is not an instance where the state did not prove its case at the first trial, so that granting a new trial gave the state a second chance to produce enough evidence to convict the accused. If so, as the majority notes, re-trial offends constitutional double jeopardy.
Rather, this is an instance where the state produced enough evidence to convict the accused at the first trial, but nevertheless the conscientious trial judge was troubled by a doubt concerning the defendant's actual guilt. In ordering the new trial, he did so to protect the accused (his denial of the new trial would have been unreviewable under our jurisprudence, since "some" evidence sufficient to support a verdict of guilt had been introduced).
In reality, the trial judge's reason for granting the new trial is better expressed by his authorization to do so whenever "[t]he court is of the opinion that the ends of justice would be served by the granting of a new trial, although the defendant may not be entitled to a new trial as a matter of strict legal right," La.C.Cr.P. art. 851(5). *1299 Under these circumstances, I do not believe that Burks requires us to hold that double jeopardy is occasioned by a new trial granted for such reason.
I therefore respectfully concur.
DENNIS, Justice, dissenting.
I respectfully dissent.
Although the Supreme Court in Burks v. United States, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978) was not confronted with a case in the exact posture as the instant proceeding it is clear that the constitutional principles expounded there are applicable here. The high court flatly stated that "[t]he Double Jeopardy Clause forbids a second trial for the purpose of affording the prosecution another opportunity to supply evidence which it failed to muster in the first proceeding." Id., 98 S.Ct. at 2147, 57 L.Ed.2d at 9. The Court's opinion provides no basis for limiting its holding to cases in which a reviewing court has set aside a conviction for evidentiary insufficiency. On the contrary, the Court supported its decision by pointing out that reversal for insufficient evidence should be treated the same whether made by the trial court or the reviewing court:
"[I]t should make no difference that the reviewing court, rather than the trial court, determined the evidence to be insufficient.... To hold otherwise would create a purely arbitrary distinction between those in petitioner's position and others who would enjoy the benefit of a correct decision by the District Court." Id., 98 S.Ct. at 2147, 57 L.Ed.2d at 9.
Moreover, in a companion case, United States v. Scott, 437 U.S. 82, 98 S.Ct. 2187, 2196-97, 57 L.Ed.2d 65, 77-78 (1978), the Supreme Court made it clear that the question of whether a trial court's ruling is to be treated as an acquittal for purposes of double jeopardy is not to be determined by the judge's own characterization of his action. The Court in Scott relied on United States v. Martin Linen Supply Co., 430 U.S. 564, 97 S.Ct. 1349, 51 L.Ed.2d 642 (1977), in which the Court made the following statement:
"[W]hat constitutes an `acquittal' is not to be controlled by the form of the judge's action. [citations omitted] Rather, we must determine whether the ruling of the judge, whatever, its label, actually represents a resolution, correct or not, of some or all of the factual elements of the offense charged."
Therefore, as I read Burks, Scott and Martin Linen, the double jeopardy clause has now been interpreted so as to prohibit a reprosecution of a defendant after a determination, by either a trial or appellate court, that the evidence introduced at trial was insufficient to sustain the verdict, regardless of the label placed on the motion and ruling by the defendant or the trial judge.
Additional support for this view may be found in the following language quoted with approval in the recent United States Supreme Court decision in Greene v. Massey, 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15, 20 (1978):
"`Regardless of whether an appellate court or a trial jury makes the determination that the evidence is insufficient to sustain a finding of guilt as to a particular charge, and regardless of whether a petitioner moves for a new trial on other grounds in addition to asserting the ground of insufficiency of [the] evidence, it would seem that the double jeopardy clause would preclude giving the prosecution a second chance.'"
There appears to be no better reason for allowing the prosecution to retry such a case as the present one than there is to allow the prosecution, for example, to retry a defendant after discharging the jury upon discovering that it has insufficient evidence because of the absence of witnesses. See Downum v. United States, 372 U.S. 734, 83 S.Ct. 1033, 10 L.Ed.2d 100 (1965); Cornero v. United States, 48 F.2d 69 (9th Cir. 1931).
Although it is not stated explicitly in any of the Supreme Court's recent opinions, their total effect apparently eliminates the possibility that a defendant may merely be granted a new trial upon a finding of evidentiary *1300 insufficiency and requires that a judgment of acquittal be entered instead. This result appears, moreover, to be consistent with the purpose underlying the prohibition against double jeopardy, as stated, for example, by the Supreme Court in Green v. United States, 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957):
"The underlying idea, one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty." Id., 355 U.S. 187-188, 78 S.Ct. 221, 223, 2 L.Ed.2d 199.
For the foregoing reasons, defendant's conviction should be reversed and set aside and the defendant ordered discharged.
NOTES
[*] Dixon, Calogero and Dennis, JJ., would all grant a rehearing.
[1] In his Oral Reasons for Judgment, the trial judge stated:

"In the present case, I heard the same evidence the jury did, I'm convinced that there was no evidence, certainly not evidence beyond a reasonable doubt, to sustain the verdict of homicide committed by the defendant of this particular victim."